IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO,
EASTERN DIVISION

| | | |
|---|---|---|
| TAMARA SPENCER WARD | :: | CASE NO. |
| AND MICHAEL WARD | :: | |
| 20169 Fierce Ridge Road | :: | JUDGE: |
| Glouster, OH 45732 | :: | |
| | :: | |
| **Plaintiffs,** | :: | |
| | :: | **COMPLAINT: BREACH OF CONTRACT;** |
| -v- | :: | **FRAUDULENT MISREPRESENTATION;** |
| | :: | **NEGLIGENT MISREPRESENTATION;** |
| POWER HOME SOLAR, LLC d/b/a | :: | **NEGLIGENT HIRING AND TRAINING;** |
| PINK ENERGY | :: | **CONSUMER PROTECTION ACT;** |
| c/o Corporation Service Company, | :: | **DECLARATORY JUDGMENT; CIVIL** |
| Statutory Agent, | :: | **CONSPIRACY; NEGLIGENCE;** |
| 3366 Riverside Drive, Ste 103 | :: | **PUNITIVE DAMAGES** |
| Upper Arlington OH 43221 | :: | |
| | :: | |
| And | :: | |
| | :: | |
| GOODLEAP LLC (f/k/a Loanpal) | :: | |
| c/o CT Corporation System, statutory | :: | |
| agent | :: | |
| 4400 Easton Commons Way, Ste 125 | :: | |
| Columbus, OH 43219 | :: | |
| | :: | |
| And | :: | |
| | :: | |
| JAYSON WALLER | :: | |
| 16520 Reinsch Drive | :: | |
| Davidson, NC 28036 | :: | |
| | :: | |
| **Defendants.** | | |

Now come Plaintiffs, Tamara Spencer Ward and Michael Ward, by and through the

undersigned Counsel, and for their Complaint, state as follows:

<u>**PARTIES, JURISDICTION AND VENUE**</u>

1.      At all times relevant herein, Plaintiffs Tamara Spencer Ward and Michael Ward (hereinafter referred to as "Plaintiffs") resided in the City of Glouster, County of Athens and State of Ohio.

2.      At all times relevant herein, Power Home Solar, LLC, doing business as Pink Energy, (hereinafter referred to as "Defendant Pink Energy"), is/was a Delaware solar power company licensed to transact business in the State of Ohio, and was acting by and through its agents and/or employees by engaging in the solicitation, sale, installation, and maintenance of solar powered energy systems designed for residential use.

3.      At all times relevant herein, Goodleap LLC (f/k/a Loanpal) is/was a California limited liability company licensed to transact business in the State of Ohio and was acting in concert with and/or in an agency type relationship with Defendant Pink Energy, by providing financing to the Plaintiffs in the purchase of the Defendant Pink Energy solar system.

4.      Plaintiffs entered into a "Solar Energy System Purchase & Installation Agreement" (hereinafter "Sales Agreement") with Defendant Pink Energy and a Loan Agreement (hereinafter "Loan Agreement") with Defendant Goodleap,  through Defendant Pink Energy's agents/employees and said contracts were entered into in Athens County, Ohio, and forms one of the bases of the within lawsuit. Copies of the Sales Agreement and the Loan agreement are attached as Exhibits "A" and "B' of this Complaint.

5.      At all times relevant herein, Defendant Jayson Waller ("Defendant Waller") was a resident of Town of Davidson, County of Mecklenburg, and State of North Carolina, and was the founder and Chief Executive Officer of Defendant Pink Energy. Hereinafter Defendant Pink Energy and Defendant Waller shall collectively be referred to as the "Pink Energy Defendants").

2

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) by reason that the Plaintiffs are residents of the State of Ohio; Defendants are residents of the State of Delaware, State of California, and the State of Michigan, thus creating diversity of citizenship; and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

7. Venue is proper with this Court pursuant to 28 U.S.C. §1397 and Rule 82.1 of the Local Rules for the United States District Court for the Southern District of Ohio, Eastern Division, by reason that the claims set forth herein arose in the City of Glouster, County of Athens, and State of Ohio.

## GENERAL ALLEGATIONS

8. Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

9. In the fall/winter of 2020, Plaintiffs initiated a search for vendors licensed to sell, install, and maintain solar equipment in order to utilize a more efficient and environmentally friendly energy source for their home.

10. During that same time, Defendant Pink Energy published to the general public via various national and state media outlets representations relating to:

    A. the quality and efficiency of their energy saving products including, but not limited to, its solar panels, inverters/converter, batteries, and other miscellaneous components;

    B. the quality of the installation of said products/equipment by Defendant Pink Energy's installers;

    C. the kilowatt/electricity reduction/savings the plaintiffs would receive after installation; and

        D.      the continued maintenance/repair of the equipment after the installation.

11.     Plaintiffs allege that each of the representations knowingly made by Defendant Pink Energy were collectively and separately patently false, fraudulent, misleading, scientifically inaccurate, scientifically impossible to obtain, and contrary to law, exaggerated beyond mere puffery.

12.     In justifiable reliance on the truth of the representations made by Defendant Pink Energy in their various solicitations, Plaintiffs contacted Defendant Pink Energy in September of 2020.

13.     On or about December 21, 2020, an agent/employee of Defendant Pink Energy accepted and scheduled an appointment on behalf of Defendant Pink Energy and met the Plaintiffs at their residence located at Glouster, Ohio.

14.     Said agent/employee, recognizing and acknowledging that Plaintiffs were in fact relying on his expertise and guidance as an employee/agent of Defendant Pink Energy, made representations consistent with those of which were contained in Defendant Pink Energy's various advertisements, that:

        A.      based on their expressed expectations, the square footage of their dwelling, a review of their then existing energy bills, knowledge of the local public utilities rate structure for solar powered homes, the dwelling's unique topographical setting, and certain local meteorological data that a 9.24 kilowatt/hour system (28 solar panels) was appropriate to fully meet their expectations;

        B.      there would be a significant reduction in Plaintiffs' present electrical bill;

        C.      the panels would produce a sufficient number of kilowatt hours to reduce Plaintiffs' usage/cost by a significant percentage of their yearly energy consumption;

4

D.     Plaintiffs would generate an average number of kilowatt hours per year based on the representations in paragraph A;

E.     upon timely execution of the Sales Agreement, they would receive additional financial benefits via Federal and/or State tax credits which could be applied through various options provided by Defendant Pink Energy and/or Goodleap.

15.    Defendant Pink Energy also provided Plaintiffs with an "energy efficiency package" (hereinafter referred to "eep") which purportedly included, among other things:

A.     20 LED light bulbs;

B.     Blown Insulation;

C.     A hot water heater thermal blanket;

D.     Recessed lighting cover;

E.     A solar attic fan;

F.     A shower head; and

G.     A sink aerator.

16.    Under the section of the Sales Agreement titled, "Scope of Work," Defendant Pink Energy grouped the solar system output and supposed eep benefits together to calculate the amount of power they would draw from the electric grid versus the amount they would make/save by switching to Defendant Pink Energy's solar system.

17.    Upon information and belief, Defendant Pink Energy was selling its solar panels to customers at a high markup price.

18. The National Renewable Energy Laboratory (NREL), a branch of the U.S. Department of Energy, estimates that the average cost for the purchase and installation of a residential solar system was approximately $2.71 per watt for the calendar year 2020.[1]

19. Using NREL's average of $2.71 per watt, Plaintiffs should have paid approximately $25,040.40 for their 9.24-kilowatt solar system.

20. Defendants charged Plaintiffs $53,668.00, ($73,668 - $20,000 battery)($5.80 per watt) for their solar system, a mark-up of approximately 114% over the national average in 2020.

21. Upon information and belief, Defendant Pink Energy trained its employees to engage in pressured hard-sell sales tactics.

22. Upon information and belief, all or most of the sales techniques/scripts were developed by Defendant Waller who, in his own words, stated: "I started running the sales department and training reps myself."[2]

23. Defendant Waller further admitted in his Book: *Own Your Own Power: No Excuses. No Bullsh*t. The Time is Now,* that after he founded Defendant Pink Energy:

> I did everything. I called customers. I wrote up proposals. I closed deals. I took measurements. You name it. As a result, I know the company's business inside and out. I know every job. I could step into anyone's role and do the job. That is taking the stairs. When I motivate our sales guys today, I've been where they are" [3]

24. Upon information and belief, these sales tactics and techniques described by Mr. Waller are those same tactics and techniques used on Plaintiffs to secure a sale.

---

[1] *Solar Installed System Cost Analysis*, NREL.gov, https://www.nrel.gov/solar/market-research-analysis/solar-installed-system-cost.html (last visited June 30, 2022).
[2] *Jayson Waller of POWERHOME SOLAR: 5 Things I Wish Someone Told Me Before Became A Founder and CEO*, Candice Georiadis, Medium.com, https://medium.com/authority-magazine/jayson-waller-of-powerhome-solar-5-things-i-wish-someone-told-me-before-became-a-founder-and-ceo-7eee15ea1b44 (last accessed June 30, 2022).

[3] *Own Your Own Power: No Excuses. No Bullsh*t. The Time is Now.* Jason Waller, 2021, Lion Crest Publishing, Pg. 58.

25.     Upon information and belief, these hard sell tactics included providing Plaintiffs with "pain points" regarding their electric bill and referring to the electric company as "Dr. Evil" in an attempt to create a problem for which their solar system would provide a solution.

26.     Defendants also used various hard sell techniques such as providing cash incentives and erroneous promises and threats regarding the Federal Tax Credit in attempt to create urgency to purchase in Plaintiffs.

27.     Once knowingly making the false, fraudulent, and misleading representations referred to above, the sales agent/employee produced an electronic copy of the Sales Agreement on his tablet for the Plaintiffs' review.

28.     Upon information and belief, the Sales Agreement was not provided in a written format and was only observable and reviewable on the Defendant Pink Energy sales agent/employee's electronic device.

29.     Defendant Pink Energy's agent/employee, with knowledge that the pace of review of each provision of the Sales Agreement was within his control, knowingly scrolled through each paragraph at a rapid and unacceptable pace, while simultaneously giving his inaccurate and erroneous interpretation of the content of each provision.

30.     Upon the Defendant Pink Energy's agent/employee concluding his explanation of each paragraph, Plaintiffs were to sign via an electronic signature program (e.g., DocuSign) after each paragraph.

31.     The Sales Agreement included a number of restrictive clauses including an arbitration clause, limitation of liability, and the waiver of constitutional rights, none of which were discussed by Defendant Pink Energy's employee while reviewing the Sales Agreement with Plaintiffs.

32. Relying on the summary of each provision as explained by the sales agent/employee, the Plaintiffs electronically signed the twenty-two-page Sales Agreement on or about December 21, 2020.

33. Said Defendant Pink Energy agent/employee then confirmed financing for the sale of the chosen solar system with a predetermined finance company acting in concert with Defendant Pink Energy.

34. At the time of the home sale presentation, the Defendant Pink Energy agent/employee would, as an integral part of the presentation, provide Plaintiffs with one or more financial institution chosen exclusively by Defendant Pink Energy that they could select to finance their solar system.

35. Upon information and belief, the Plaintiffs were not provided an option of securing alternative financing from those financial institutions selected by Defendant Pink Energy.

36. After completing the signing of the Sales Agreement, the sales agent/employee produced an electronic copy of the Loan Agreement from Defendant Goodleap which was presented to Plaintiffs in the same manner as the Sales Agreement.

37. The Loan Agreement was not provided in a written format and was only observable and reviewable on the Defendant Pink Energy sales agent/employee's electronic device.

38. Plaintiffs had no access to the same Loan Agreement on their individual electronic device at the time of signing.

39. Defendant Pink Energy's agent/employee, with knowledge that the pace of review of each provision of the Loan Agreement was within his control, knowingly scrolled through each paragraph at a rapid and unacceptable pace, while simultaneously giving his inaccurate and erroneous interpretation of the content of each provision.

40.     Upon the Defendant Pink Energy's agent/employee concluding his explanation of each paragraph, Plaintiffs were to sign via an electronic signature program (e.g., DocuSign) after each paragraph.

41.     Relying on the summary of each provision as explained by the sales agent/employee, the Plaintiffs electronically signed the eighteen-page Loan Agreement in the same manner they signed the Sales Agreement.

42.     The Loan Agreement contained a "Holder Rule" Notice subjecting Defendant Goodleap, as the loan holder, to "all claims and defenses which debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof," a contract provision which subjects Goodleap to any liability that may arise based on the misconduct of Defendant Pink Energy.

43.     Once the sale was complete, Defendant Pink Energy was then required to obtain the necessary permits and authorizations from various entities, e.g.  Homeowner Associations; local power companies servicing the Plaintiffs' dwelling; and local government permit offices.

44.     In May 2021, a Defendant Pink Energy installation crew and/or a sub-contractor crew hired/retained by Defendant Pink Energy as their agents and/or employees, arrived at Plaintiffs' residence and commenced the installation of the solar panel system.

45.     The installation crew had a putative crew leader who represented to the Plaintiffs that they were employees of Defendant Pink Energy.

46.     Further, the crew leader represented to Plaintiffs that the crew consisted of well skilled craftsmen who were well trained in the installation of solar panels.

47.     Upon information and belief, said representations were patently false.

9

48.     During pre-installation conversations with the Plaintiffs and during the installation of the various components of the solar system kit, the lack of qualifications and skill of the entire crew became apparent to the Plaintiffs.

49.     After the initial conversation with the Plaintiffs as described above, the installation crew, under the direction of the crew leader, commenced installation committing the following errors and substandard workmanship:

      A.     in the drilling of holes into the residence to secure the solar brackets, in the drilling of holes to facilitate the wiring of the unit to the metering system, and in the drilling of holes to facilitate the installation of various components of the system;

      B.     the failure to properly seal the drilling holes used in the final installation and, repair of the holes erroneously drilled earlier, at various sites in the residence;

      C.     in the improper securing of the solar panel brackets to the residence;

      D.     in improperly wiring the solar panels to the inverter/converter; and improperly wiring the Solar System meter to the American Electric Power electric meter which measured kilowatt hours allegedly generated by the Defendant Pink Energy solar system;

      E.     in failing to fully activate the full array of solar panels installed;

      F.     In failing to maintain the installation site resulting in the obstruction of rainwater disbursement both on the roof and at ground level.

50.     Upon the representation by Defendant Pink Energy that the solar system was properly installed and primed for activation, per the terms of the Sales Agreement, it was Defendant Pink Energy's responsibility to ensure all required inspections of the final installed solar system were completed by the electrical supplier and any governmental entities.

51. The failure of any one of the governmental and non-governmental agencies/organizations to inspect and pass the Defendant Pink Energy solar system would delay or prevent the system's activation resulting in added cost and loss of benefit to the Plaintiffs.

52. Once the project was completed, Defendant Pink Energy represented to the Plaintiffs that the installation of the solar system was completed by the installers, however, the Defendant Pink Energy system was not activated until August/September 2021.

53. Following the activation of the system in the summer of 2021 up to and including the date of the filing of this Complaint, Plaintiffs continued to monitor their system using an application provided by Defendant Pink Energy to monitor energy production.

54. Since installation and activation of the system, Defendant Pink Energy's solar system consistently failed to produce the kilowatt hours contracted for with Defendant Pink Energy.

55. Pursuant to the Sales Agreement, the solar system purchased by the Plaintiffs was estimated to produce approximately 9,864 watts per year. Pursuant to the estimates provided by Defendant Pink Energy, this, together with the "eep" would provide approximately 52% of their yearly electrical draw, with the remaining 48% coming from the electrical grid through their utility provider, American Electric Power.

56. In fact, the Plaintiffs' system generated, on average, significantly lower output than was quoted to them prior to signing the Sales Agreement.

57. Plaintiffs' electric bills have remained largely unchanged since the activation of their solar system and now they must pay the amount billed by their electric company in addition to the new loan payment for the installation of the solar system.

58.     Despite the representations made by Defendant Pink Energy, the solar system affixed to Plaintiffs' house has never provided the cost savings or energy production promised by Defendants.

59.     Plaintiffs have continued to try to work with Defendants regarding their solar system's issues as recently as Summer 2022, yet Defendants have failed to fix the problems with Plaintiffs' solar system and, in fact, have begun to ignore Plaintiffs' calls for customer support.

60.     Upon information and belief, Plaintiffs' experience with Defendants has not been unique; in fact, Defendants have continued to defraud similarly situated customers all throughout the State of Ohio and the rest of the United States and was aware of the issues its customers were facing.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

61.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

62.     Pursuant to the terms of the Sales Agreement issued by Defendant Pink Energy and its sales agent, Defendant Pink Energy agreed and promised to install, activate and maintain a solar power system which would significantly lower Plaintiffs'' electric consumption by reducing the amount of kilowatt hours drawn from the electric-grid and instead, produce sufficient kilowatt hours from the installed solar system to supply sufficient power for daily residential use, to store and/or sell excess kilowatt hours of electric power for future use.

63.     To date, the solar system installed by Defendant Pink Energy has failed to meet the representations to Plaintiffs prior to signing the Sales Agreement.

64.     Defendant Pink Energy has breached the terms of the Sales Agreement by failing to deliver a solar system that meets industry standards; by failing to install the system in a workmanlike manner; by failing to competently install and connect the various components of the system, by failing to activate the system according to the Sales Agreement and failing to maintain and or repair flaws in the system which occurred and continue to occur to the present date.

65.     As a direct and proximate result of said Defendants' breach of contract, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

66.     Plaintiffs ask this Court for an order of rescission for the Sales Agreement and Loan Agreement between Plaintiffs and Defendants.

67.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

### SECOND CAUSE OF ACTION
### (Fraudulent Misrepresentation)

68.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

69.     Pursuant to Defendant Pink Energy's pre-sale solicitations and the representations made by the Defendant Pink Energy sales agent/employee as set forth in the final Sales Agreement entered into between Plaintiffs and Defendant Pink Energy, the Defendant owed a duty to Plaintiffs' to disclose truthful and factually correct scientific and output performance data as to the quality of their system, the installation of the system the activation of the system and the quality of maintenance and repair of the system.

70.     Defendant Pink Energy made false representations regarding facts material to the

purchase, installation, performance, and maintenance and repair of their solar system as more fully outlined previously in this Complaint.

71. Pink Energy possessed actual and/or constructive knowledge of the falsity of their representations regarding the quality of their product, quality of their installation and ability of their solar system to meet the estimates provided in the Sales Agreement.

72. Defendant Pink Energy made the fraudulent and false misrepresentations to matters of material fact as fully described herein with the intent to mislead Plaintiffs into relying on such fraudulent and false misrepresentations.

73. Upon information and belief, these fraudulent and false misrepresentations were part of the sales pitch developed by Defendant Waller.

74. Plaintiffs justifiably relied on Defendants' fraudulent and false misrepresentations to their detriment.

75. As a direct and proximate result of the Defendant Pink Energy Defendants' fraudulent misrepresentation, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

76. Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

### THIRD CAUSE OF ACTION
**(Negligent Misrepresentation)**

77. Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

78. Defendants Defendant Pink Energy had a pecuniary interest in the sale, installation, activation, and future maintenance and repair of the solar system.

14

79.     Defendant Pink Energy supplied false information to Plaintiffs to influence the Plaintiffs' decision to purchase the Defendant Pink Energy solar power system, to have Defendant Pink Energy install and activate the system and maintain and repair the components of the system.

80.     Upon information and belief, these misrepresentations were part of the sales pitch developed by Defendant Waller.

81.     Defendants failed to exercise reasonable care or competence in obtaining or communicating such false information to Plaintiffs

82.     Plaintiffs justifiably relied on the false information received from the Defendants.

83.     As a direct and proximate result of the Defendant Pink Energy Defendants' negligent misrepresentations, Plaintiffs have incurred consequential damages including, but not limited to, significant debt, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

84.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

### FOURTH CAUSE OF ACTION
**(Fraudulent Inducement)**

85.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

86.     Defendant Pink Energy, by and through its employees/agents and with actual and/or constructive knowledge, made material misrepresentations and/or omissions regarding the sale, installation, activation, and future maintenance/repair of the components.

87.     Upon information and belief, these misrepresentations were part of the sales pitch developed by Defendant Waller.

15

88.     Plaintiffs justifiably relied on these misrepresentations and assurances when entering into the Sales and Loan Agreements.

89.     As a direct and proximate result of the Defendant Pink Energy Defendants' fraudulent inducement, Plaintiffs have incurred consequential damages including, but not limited to, incurring significant debt, loss of the use of their monies, home, and other substantial, actual, and consequential damages.

90.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

**FIFTH CAUSE OF ACTION**
**(Declaratory Judgment to Find Plaintiffs Never Agreed to Arbitrate their claims and for the Court to Void the Arbitration Agreement and the Limitations of Liability Clauses/Exhibits of the Sales Agreement between Plaintiffs and Defendant Pink Energy)**

91.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

92.     Pursuant to the terms of the Sales Agreement, this Court should rely upon Ohio law when reviewing the Sales Agreement and Arbitration Clause.

93.     This Declaratory Judgment action is brought pursuant to Ohio Revised Code, § 2721.01, *et seq.* to declare the rights and other legal relations of the parties.

94.     Defendant Pink Energy's sales agent surreptitiously acquired Plaintiffs' signatures on the Sales Agreement, including the Arbitration Provision, without Plaintiffs' knowledge and consent by having them sign the Sales and Loan Agreements electronically without giving them the chance to review either agreement or instead summarizing the terms for Plaintiffs.

95.     The Limitations of Liability and Arbitration clauses found in the Sales Agreement are void as a matter of law as they fail to provide Plaintiffs with a meaningful remedy.

16

96.     The Sales Agreement, including, but not limited to, the arbitration clause and the limitation of liabilities clause as a whole is manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties; and the Sales Agreement is not consistent with the intention of the parties that damages in the amount stated should follow the breach.

97.     As more fully set forth herein, the Sales Agreement was provided on the Defendant Pink Energy sales agent's personal electronic device and controlled by the Defendant Pink Energy agent as instructed by Defendant Pink Energy.

98.     The Plaintiffs were then instructed to electronically sign said agreement based solely on the Defendant Pink Energy agent's interpretation of the  various clauses to include the Limitations of Liability and Arbitration Clause; and said presentation failed to meet any meaningful review of both clauses by Plaintiffs.

99.     Additionally, as more fully set-forth herein, Plaintiffs were promised additional financial and/or tax incentives if they signed the Sales Agreement before the expiration of said additional financial incentives further increasing the pressure on the Plaintiffs to sign the Sales Agreement on the day of presentation and further evidencing Plaintiffs' position that the Defendant failed to fully explain the Limitation of Liability and Arbitration clauses.

100.    Plaintiffs request this Court enter a declaration that there was no meeting of the minds between the parties as to the arbitration clause and thus, there was no agreement from Plaintiffs to the Arbitration Agreement

101.    Plaintiffs request this Court enter a declaration that the Limitation of Liability clause and the Arbitration Agreement in the Sales Agreement between Plaintiffs and Defendant Pink Energy are void as a matter of law.

**SIXTH CAUSE OF ACTION**
**(Declaratory Judgment to find Plaintiffs Never Agreed to Arbitrate their claims and for the Court to Void the Arbitration Agreement and the Limitations of Liability Clauses/Exhibits of the Loan Agreement between Plaintiffs and Defendant GoodLeap)**

102.    Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

103.    This Declaratory Judgment action is brought pursuant to 28 U.S. Code, § 2201 and/or Ohio Revised Code, § 2721.01, *et seq.* to declare the rights and other legal relations of the parties.

104.    Defendant Pink Energy's sales agent surreptitiously acquired Plaintiffs' signatures on the Loan Agreement, including the Arbitration Provision, without Plaintiffs' knowledge and consent by having them sign the Loan Agreement electronically without giving them the chance to review the terms of the Loan Agreement and instead summarizing its terms.

105.    The Limitations of Liability and Arbitration clauses found in the Loan Agreement are void as a matter of law as it fails to provide Plaintiffs with a meaningful remedy.

106.    The Loan Agreement as a whole is manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties; and is not consistent with the intention of the parties that damages in the amount stated should follow the breach.

107.    As more fully set forth herein, the Loan Agreement was provided on the Defendant Pink Energy sales agent's personal electronic device and controlled by the Defendant Pink Energy agent as instructed by Defendant Pink Energy.

108.    The Plaintiffs were then instructed to electronically sign said agreement based solely on the Defendant Pink Energy agent's interpretation of the various clauses to include

the Limitations of Liability and Arbitration Clause; and said presentation failed to meet any meaningful review of both clauses by Plaintiffs.

109. Additionally, as more fully set-forth herein, Plaintiffs were promised additional financial and/or tax incentives if they signed the Sales Agreement before the expiration of said additional financial incentives further increasing the pressure on the Plaintiffs to sign the Sales Agreement on the day of presentation and further evidencing Plaintiffs' position that the Defendant failed to fully explain the Limitation of Liability and Arbitration clauses.

110. Plaintiffs request this Court enter a declaration that the Limitation of Liability clause and the Arbitration Agreement in the Loan Agreement between Plaintiffs and Defendant Goodleap are void as a matter of law.

111. Plaintiffs request this Court enter a declaration that there was no meeting of the minds between the parties as to the arbitration clause and thus, there was no agreement from Plaintiffs to the Arbitration Agreement

112. Further, ¶ 15 of the Loan Agreement provides: "The Federal Arbitration Act (9 U.S.C., § 1-16) shall govern this agreement to arbitrate including all arbitrability issues." (Hereinafter referred to as the "delegation clause").

113. The delegation clause is void as a matter of law in that there was no meeting of the minds and does not express the true intention of the parties.

114. Plaintiffs request this Court enter a declaration that there was no meeting of the minds between the parties as to the delegation clause and thus, there was no agreement from Plaintiffs to the delegation clause, and further, that the delegation clause is void as a matter of law.

**SEVENTH CAUSE OF ACTION**
**(Negligent Selection/ Retention and Training by Defendant Pink Energy)**

115.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

116.     Plaintiffs state that Defendant Pink Energy owed a duty of exercising reasonable care in hiring and training its contractors and/or employees to sell, install, activate, and maintain the solar systems installed on Plaintiffs' properties.

117.     Plaintiffs state that Defendant Pink Energy breached its duty to Plaintiffs in failing to exercise reasonable care in hiring and failing to properly train the contractors and/or employees responsible for installing and/or maintaining the solar systems installed on Plaintiffs' properties.

118.     Upon information and belief, and per Defendant Waller's own words, Defendant Waller personally oversaw and developed the sales training/techniques used by Defendant Pink Energy salespeople.

119.     Plaintiffs state that Defendant Pink Energy breached its duty to Plaintiffs in failing to exercise reasonable care in hiring and failing to properly train the employees who advised Plaintiffs regarding the sale of the solar system.

120.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

**EIGHTH CAUSE OF ACTION.**
**(Breach of Warranty)**

121.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

122.    Plaintiffs state that there have been no substantial changes to the installed solar system from its condition when it was designed, manufactured, marketed, supplied, distributed and/or sold and/or installed by the Defendants.

123.    In supplying, delivering and/or installing said solar system, Defendants expressly warranted their product as evidenced by Paragraph 7 of the Sales Agreement attached hereto.

124.    The said Defendants breached those express and implied warranties by, among other things, delivering, and/or supplying, and/or selling and/or installing said solar system in an unsafe, defective, and unfit condition.

125.    As a direct and proximate result of said Defendants' breach of warranty, Plaintiffs suffered damages.

126.    Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

### NINTH CAUSE OF ACTION
### (Violations of the Ohio Consumer Protection Act)

127.    Plaintiffs are individually "consumers" within the meaning of O.R.C. § 1345.01(D).

128.    Defendant Pink Energy is a "supplier" as that term is defined by ORC § 1345.01(C).

129.    Defendant Pink Energy's sale of solar systems to Plaintiffs is a "consumer transaction" as defined by ORC §1345.01(A), as the transaction involved a sale of an item of goods in which Plaintiffs purchased a consumer good from Defendant Pink Energy.

130.    As detailed above, supra, Defendant Pink Energy committed unconscionable, unfair, and unlawful acts and practices by among other things, engaging in high-pressure sales tactics, including threats that Plaintiffs would lose a solar tax credit (among other

benefits) if they did not immediately sign the Sales Agreement and repeatedly quoting the individual Plaintiffs with estimates of power output that Defendants knew, or should have known, their systems were incapable of producing.

131. Upon information and belief, these high-pressure sales techniques were part of the sales pitch/techniques developed by Defendant Waller.

132. The Defendant Pink Energy Defendants' conduct violates ORC § 1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

133. The Defendant Pink Energy Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiffs.

134. As a direct and proximate result of the foregoing, Plaintiffs have suffered injuries including, but not limited to actual damages and consequential damages. As a result of the violations of the Defendant Pink Energy Defendants, Plaintiffs are entitled to an award of actual damages, statutory damages, as well as an award of reasonable attorney's fees.

135. Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

### TENTH CAUSE OF ACTION
#### (Civil Conspiracy)

136. Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

137. The cost of installation of Defendant Pink Energy's Solar system was greatly overpriced, requiring Plaintiffs to pay more than double the cost of the national average per kilowatt hour for a similar solar system in 2020.

138.    Knowing that having easily available credit extended to the potential purchaser of the system would further promote the sale of the system, Defendant Pink Energy and Defendant Goodleap conspired together to facilitate the sale of the system.

139.    Upon information and belief, other than the specific lenders provided by Defendant Pink Energy, Plaintiffs were unaware they could seek financing through a third party.

140.    Defendant Goodleap knew, or should have known, that Defendant Pink Energy secured the signing of the Sales and Loan Agreements with Plaintiffs through fraudulent, false, and misleading representations at the time of the sale and said fraudulent conduct continues to the present day.

141.    In fact, upon information and belief, Defendant Goodleap had specific employees and/or departments dedicated to "Partner Relations" that was intimately familiar with Defendant Pink Energy and its sales practices.

142.    Upon information and belief, Defendant Goodleap was contacted by numerous residents throughout Ohio and the United States regarding their issues with the Solar System and was uniquely aware of the growing dissatisfaction with Defendant Pink Energy's business practices.

143.    Having such knowledge, Defendant Goodleap acted in concert with Defendant Pink Energy in facilitating the fraudulent conduct by agreeing to be one of the financial institutions provided to customers, including Plaintiffs, by Defendant Pink Energy.

144.    Having entered into this conspiratorial relationship, Defendant Pink Energy agents acted in concert with Goodleap agents to secure the Sales and Loan agreements and ultimately for Goodleap to secure the financing of said system.

145.     Defendant Goodleap benefited from this conspiracy by securing plaintiffs as a payor and ensuring that independent of whether Defendant Pink Energy actually performed all duties under the Sales Agreement, the Plaintiffs would be obligated to satisfy the loan.

146.     Defendant Goodleap's conduct was knowing, intentional, reckless, and malicious.

147.     As a direct and proximate result of the foregoing, Plaintiffs have suffered injuries including, but not limited to actual damages and consequential damages.

148.     As a result of the conspiracy between Defendant Pink Energy and Defendant Goodleap. Plaintiffs are entitled to an award of actual damages, statutory damages, as well as an award of reasonable attorney's fees.

## ELEVENTH CAUSE OF ACTION
### (Negligence)

149.     Plaintiffs hereby incorporate the preceding paragraphs of this Complaint, inclusive, as though fully rewritten and alleged herein.

150.     Defendant Pink Energy, by and through its employees/agents, owed a duty to individuals, including Plaintiffs, to use reasonable care when selling, installing, and monitoring its solar system products.

151.     Defendant Pink Energy, by and through its employees/agents, breached its duty and was negligent in, among other things, providing Plaintiffs with incorrect information regarding the output expected from their solar system, causing damage to Plaintiffs' property while installing the solar system, failing to monitor/maintain its solar system, and failing to cure any problems or defects that arose after installation was complete.

152.     As a direct and proximate result of Defendant Pink Energy's negligence, Plaintiffs have suffered injuries and damages as more fully explained in the General Allegations set forth in this Complaint.

153.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

### TWELFTH CAUSE OF ACTION
### (Punitive Damages Claim)

154.     Plaintiffs hereby incorporate the preceding paragraphs, inclusive, of this Complaint as though fully rewritten herein.

155.     Plaintiffs state that the Defendant Pink Energy Defendants recklessly and maliciously displayed a conscious disregard for the rights of Plaintiffs by, among other things, fraudulently misrepresenting material facts knowing that such failures and misrepresentations would result, with substantial certainty, in injury and in damage to Plaintiffs.

156.     Plaintiffs further state that Defendant Goodleap acted in concert with Defendant Pink Energy as more fully explained in Plaintiff's Tenth Cause of Action for Civil Conspiracy.

157.     As a direct and proximate result, Plaintiffs suffered those damages as fully set forth and described in Plaintiffs' preceding Causes of Action and is entitled to an award of punitive damages against Defendants Pink Energy, Jayson Waller, and Goodleap.

158.     Pursuant to the "Holder Rule" Notice in the Loan Agreement, Defendant Goodleap is subject to the same claims and defenses asserted against Defendant Pink Energy.

WHEREFORE, Plaintiffs demands judgment against Defendants Power Home Solar, LLC d/b/a Pink Energy, Goodleap (f/k/a Loanpal), and Jayson Waller, equally and severally in an amount exceeding $75,000.00 in compensatory and punitive damages, attorneys' fees, interest, cost, and further relief to which Plaintiffs may be entitled.

Respectfully submitted,

*/s/ Stacie L. Roth*
Stacie L. Roth (0071230)
Sean R. Steward (0095703)
**SCHULMAN, ROTH & ASSOC. CO., LPA.**
The Carnegie Building
236 3rd Street SW
Canton, Ohio 44702
(330) 456-4400 (telephone)
(330) 456-3641 (FAX)
sroth@lawyersonyoutside.com
ssteward@lawyersonyourside.com

And

*/s/ Robert J. Tscholl*
Robert J. Tscholl (0028532)
Robert J. Tscholl, LLC
236 3rd Street SW
Canton, Ohio 44702
330-497-3641
330-456-3641 (FAX)
Btscholl740@@yahoo.com

*Counsel for Plaintiffs*

## REQUEST FOR ISSUANCE OF SUMMONS

Plaintiffs hereby state that pursuant to Federal Civil Rule 4(b), Plaintiffs have presented a

Summons for each Defendant. Plaintiffs hereby request that said Summons be signed and sealed

by the Clerk of Courts and issued to Plaintiffs for service.

*/s/ Stacie L. Roth*
Counsel for Plaintiffs

26